JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DAVIDSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AUTO CREDIT CORPORATION, a California Corporation.<br><br>Defendant. | Case No. 8:20-cv-00636-MCS-KES<br><br>**ORDER TRANSFERRING VENUE** |

The Court deferred adjudication of defendant United Auto Credit Corporation's Motion to Dismiss ("Motion") until it could assess the propriety of this action's transfer to the United States District Court for the Eastern District of Virginia ("EDVA") under 28 U.S.C. § 1404(a). Mot., ECF No. 32; Order Re: Def.'s Motion to Dismiss ("MTD Order"), ECF No. 42. The MTD Order invited United and Plaintiff to file supplemental briefs "detailing their respective positions concerning" a transfer. *See* MTD Order 7. The parties then filed a joint statement agreeing to the immediate transfer of this matter to EDVA. *See* Joint Statement, ECF No. 46. For the following reasons, the Court **TRANSFERS** this action to EDVA and **DEFERS** the Motion.

1

## I. BACKGROUND

Plaintiff is a Virginia resident who purchased a 2011 GMC Acadia in Fredericksburg, Virginia (the "Vehicle") from "Select Cars of Thornburg" while he was on active duty status with the U.S. Army. Second Am. Class Action Compl. ("SAC") ¶¶ 3, 13, 28 ECF No. 31; *see also* Retail Installment Contract and Security Agreement ("Agreement"), SAC Ex. A. Plaintiff secured financing through the Agreement, which was assigned to United at the following address: PO Box 277536, Sacramento, California. Agreement 6. United is a creditor headquartered in Newport Beach, California that provides "financing for thousands of automotive dealer locations across the United States." Agreement; SAC ¶¶ 11, 25. Per the Agreement, Plaintiff's "Amount Financed" was $14,698.24 and the annual percentage rate was 22.99%. Agreement 1; SAC ¶ 30. Under "Itemization of Amount Financed" on the Agreement's second page are itemized costs including a $250 processing fee and a $350 Guaranteed Auto Protection ("GAP") waiver fee. Agreement 2; SAC ¶ 31. Plaintiff paid $2,500 down and was required to make 42 monthly payments of $517.19 each starting 45 days after the Agreement's execution. Agreement 1.

Plaintiff alleges that "United employs standard form Retail Purchase Agreements and Retail Installment Contracts for loans at all of their locations across the United States, with no relevant variations." SAC ¶ 24. However, the Agreement is marked "VA-103-ARB 10/10/2015" in the upper right-hand corner, "Retail Installment Contract—VA" in each page's footer, and provides that it "is governed by the law of Virginia and applicable federal law and regulations." Agreement 1-6. Plaintiff provided the dealer with "his social security number and other credit information" but the dealer failed to provide "any disclosure to Plaintiff of his rights" under the Military Lending Act, 10 U.S.C. § 987 ("MLA"). SAC ¶ 28. Plaintiff's wife Rebecca Ollison, an active duty member of the U.S. Army stationed at Fort Belvoir, Virginia, is co-obligor of the loan. *Id.* ¶¶ 3, 12. The Agreement was signed on October 13, 2018 in Virginia by Plaintiff, Rebecca Ollison and Select Cars of Thornburg's representative. Agreement 6.

Based on these allegations, Plaintiff brings three claims under the MLA alleging that United: (1) failed to provide certain written or oral disclosures required by the MLA; (2) failed to include certain costs in Plaintiff's Military Annual Percentage Rate ("MAPR"), including the $250 processing fee, $395 GAP waiver fee, and $129.61 in undisclosed prepaid interest; and (3) included a "mandatory" arbitration clause in the Agreement. SAC ¶¶ 48-88. The arbitration clause provides that arbitration "will be conducted in the federal district where you reside…" Agreement 4.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) permits the district court to order transfer of an action *sua sponte. Costlow v. Weeks,* 790 F.2d 1486, 1488 (9th Cir. 1986) (approving of lower "court's handling of the improper venue issue ... [as] analogous to the long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of *forum non conveniens ...* so long as the parties are first given the opportunity to present their views on the issue."); *Wash. Pub. Utils. Group v. United States Dist. Court,* 843, F.2d 319, 3326 (9th Cir. 1987) ("[Section] 1404(a) does not expressly require that a formal motion be made before the court can decide that a change of venue is appropriate."). A motion for transfer pursuant to § 1404(a) lies within the district court's discretion and depends on the facts of each case. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000). The Court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986). Such factors may include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability

1    of compulsory process to compel attendance of unwilling non-party witnesses; (8) the
2    ease of access to sources of proof; (9) the presence of a forum selection clause; and (10)
3    the relevant public policy of the forum state, if any. *Jones,* 211 F.3d at 498–99.

4    **III.    DISCUSSION**

5        After reviewing the Motion, FAC, and other pleadings in this matter in light of
6    the *Jones* factors and the parties' Joint Statement, the Court concludes that transfer of
7    this action to EDVA, where the actions giving rise to Plaintiff's claims occurred, is
8    appropriate. *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 639 (9th Cir. 1988) (the
9    "'weighing of factors for and against transfer involves subtle considerations and is best
10   left to the discretion of the trial judge.'") (quoting *Commodity Futures Trading Comm'n*
11   *v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979)).

12       Plaintiff is a Virginia citizen who purchased a vehicle in Virginia from a
13   dealership based only in Virginia. *Ventress v. Japan Airlines,* 486 F.3d 1111, 1118 (9th
14   Cir. 2007) (transfer appropriate where there is "no significant connection between [the
15   forum] and the facts alleged in the complaint.") The Agreement appears specially
16   crafted for use in Virginia, provides for application of Virginia law, and was executed
17   in Virginia by three Virginia citizens. *Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
18   2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) ("Where, as here, a case involves a
19   contract dispute, courts have 'looked to such factors as where the contract was
20   negotiated or executed, where it was to be performed, and where the alleged breach
21   occurred' to determine whether venue is proper.") (citations omitted). It also appears all
22   relevant physical evidence and all fact witnesses pertaining the sole named Plaintiff are
23   in Virginia. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147
24   (C.D. Cal. 2009) ("The relative convenience to the witnesses is often recognized as the
25   most important factor to be considered in ruling on a motion under § 1404(a).")
26   (citation omitted). Plaintiff asserts no claims under California law and does not allege
27   any relevant event occurred in California aside from the Agreement being assigned to
28   a branch of United in Sacramento, outside the Central District. *Peace v. Parascript*

*Mgmt., Inc.*, 2013 WL 12137565, at *3 (C.D. Cal. Mar. 18, 2013) (transferring case involving contract executed and negotiated in Colorado to Colorado even where "performance of the agreement was anticipated by both parties to take place in and took place in California"). In fact, the only suggested nexus between this case and this district is United's headquarters. *Unicolors Inc. v. Myth Clothing Co. Inc.*, 2016 WL 738289, at *8 (C.D. Cal. Feb. 22, 2016) (holding that, despite some minimal contacts with the chosen forum, it "lack[ed] a significant connection to the activities which form the basis of [the] plaintiff's complaint" because "the majority of the facts giving rise to th[e] case arose in New York"). But Plaintiff does not allege that United's headquarters had any role in drafting, reviewing, or enforcing the Agreement, or that it otherwise played a role in this case. And while Plaintiff purports to bring this case on behalf of a nationwide class and California is the country's most populous state, courts have aptly observed that this attenuated connection does not bear on transfer, as a contrary rule "would mean that most nationwide class actions could be brought here." *Silva v. Aviva PLC*, 2016 WL 1169441, at *6 (N.D. Cal. Mar. 25, 2016) (citing *Ho v. Ikon Office Sols., Inc.*, 143 F. Supp. 2d 1163, 1167-68 (N.D. Cal. 2001) ("[A]s the most populous state in the country, California has a disproportionate share of many economic activities. By this logic,... 'virtually every significant class action case would need to be litigated in California,' a logic that has been repeatedly rejected.")). In light of this lack of connections, it is of little import that Plaintiff chose the Central District as his forum. *Pfeiffer v. Himax Technologies, Inc.*, 530 F. Supp. 2d 1121, 1126 (C.D. Cal. 2008) ("[T]he Central District has little connection to the operative facts, the parties, or the subject matter of the action and ... as a result, plaintiff's choice of forum is entitled to only minimal consideration."). This is especially true where, as here, the action purports to be brought on behalf of a nationwide class. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual … represents a class, the named plaintiff's choice of forum is given less weight."); *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs… the claim

of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened.").

Moreover, the Central District is one of the most congested districts in the country, and would be negatively impacted by exercising jurisdiction when a more appropriate forum is available. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (courts considering transfer may consider "the administrative difficulties flowing from court congestion...[and] the 'local interest in having localized controversies decided at home.'") (citations omitted). Residents in this district have an interest in ensuring their overburdened courts are not victims of forum shopping and, in the absence of factors establishing sufficient connections to this forum, should not be required to sit on a jury to resolve the claims of a Virginia resident concerning events that occurred in Virginia. (*Id.*) Plaintiff's relative expenses for litigating this case in eastern Virginia, where most if not all relevant events occurred, as opposed to Los Angeles, whose only connection is its proximity to United's headquarters, also favor transfer even if individuals from United's headquarters participate in discovery or trial. *Hogan v. ADT, LLC*, 2013 WL 12129856, at *3 (C.D. Cal. May 23, 2013) (when assessing propriety of transfer, courts consider that "corporations are better-equipped than individuals to absorb increased litigation costs.") (citations omitted). Hence, given the information before the Court, the *Jones* factors heavily favor transfer. *Parascript,* 2013 WL 12137565, at *5 ("Given the facts in this particular matter, the most salient factors are the convenience of the witnesses, particularly the non-party witnesses, and the parties' contacts with the respective forums, particularly those contacts underlying the claims in Peace's complaint, which concern the alleged negotiation, execution, and breach of the agreement. Thus, because these particularly salient factors weigh in favor of transfer, and the substantial majority of all the factors weigh in favor of transfer, the Court finds that, under section 1404(a), this matter is appropriate for transfer to the District of Colorado.")

Because the parties agree that this action should be transferred to EDVA and have

offered no additional argument or evidence to impact the Court's determination, transfer is appropriate under section 1404(a). The Motion is deferred. *Sinclair v. Wholesome & Hearty Foods,* 1995 WL 732855, at *4 n. 1 (N.D. Cal. Nov. 29, 1995) (deferring motion to dismiss to transferee court after transferring venue under § 1404(a)); *Thomas v. Asterion, Inc.,* 2010 WL 3037149, at *3 (N.D. Cal. July 30, 2010) (same).

## IV.   CONCLUSION

For the foregoing reasons, the Court: (1) **TRANSFERS** this action to the United States District Court for the Eastern District of Virginia; and (2) **DEFERS** United's Motion to Dismiss (ECF No. 32). The Clerk shall close the file and notify the Clerk of Court in the Eastern District of Virginia.

**IT IS SO ORDERED.**

Dated: October 23, 2020

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

7